# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
## 1:10-cv-222-RJC

| | |
|---|---|
| KASEAN DAMONT BRYSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| SIDNEY HARKLEROAD, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** comes before the Court on Respondent Sidney Harkleroad's ("Respondent") Motion for Summary Judgment. (Doc. No. 9).

## I.  BACKGROUND

On November 14, 2007, a Buncombe County jury convicted Petitioner Kasean Damont Bryson ("Petitioner") of first-degree murder, possession of a firearm by a felon, and two counts of assault with a deadly weapon. North Carolina v. Bryson, No. COA08-625, 2009 WL 235235, at *2 (N.C. Ct. App. Feb. 3, 2009). Petitioner then pled guilty to habitual felon status. Id. The court sentenced Petitioner to life without parole and a consecutive term of 108-139 months' imprisonment. Id. Petitioner appealed, but the North Carolina Court of Appeals found no error on February 3, 2009. Id. The Supreme Court of North Carolina likewise denied discretionary review on June 17, 2009. North Carolina v. Bryson, 679 S.E.2d 135 (N.C. 2009).

The Court of Appeals summarized the facts as follows:

The State presented evidence tending to show the following: On 14 January 2006, Julius Greenwood (Greenwood) was "hanging out" with Lawrence Levi (Levi) at Pisgah View Apartments when Levi showed Greenwood a "handful" of counterfeit, one hundred dollar bills. Greenwood testified the front side of the counterfeit bills appeared to be real, but the back side "didn't look that good." At some point, Greenwood's cousin, James Howard (Howard) arrived and the three

men piled into Levi's truck to drive to the Livingston Street Apartments to buy drugs.

When the men arrived at the apartment complex, Levi circled around the complex and stopped the truck at the corner. When Levi stopped, defendant pulled in behind the truck in a green sedan. Greenwood testified Levi purchased drugs from defendant and that he believed Levi gave defendant a counterfeit bill in exchange for the drugs. After the exchange, the men pulled off and Greenwood heard defendant yelling, "Hey, hey, hey." Levi did not stop the truck. Defendant got into his car and pursued the truck. When Levi turned right onto Victoria Road, defendant drove beside the truck and fired a shot towards them. Defendant then followed the truck onto Oakland Road where defendant rolled down the window in his car, fired additional shots towards the truck, then drove away. Greenwood testified Levi had difficulty steering the truck and said he had been shot. When the truck stopped, Greenwood called 911. Levi died shortly afterwards as a result of a gunshot wound.

Constance Shaw testified that she had been dating defendant since September of 2005 and that she rented a green, 2005 Honda Accord (Honda) from Enterprise Rental Company (Enterprise). Defendant was driving the Honda on 14 January 2005. Defendant returned the Honda to Enterprise on 18 January 2005.

Paige Moore (Ms. Moore), a Loss-Control Supervisor for Enterprise testified on behalf of the State that Ms. Shaw had rented a green Honda Accord on 17 November 2005 as a replacement vehicle for a previous rental. Ms. Moore testified that the car rental contract indicated there was no damage to the Honda at the time of Ms. Shaw's rental. A branch vehicle accident report indicated the Honda was returned with scratches on both the driver and passenger side doors and scrapes on the hood.

Detective Kevin Taylor of the Asheville Police Department obtained a sample of defendant's DNA. Detective Taylor verified the location of the Honda at Ralph's Body Shop and arranged for it to be transported to the SBI lab in South Asheville. After the vehicle was processed, it was towed back to Ralph's Body Shop on 23 January 2006. The vehicle was still available for inspection at Ralph's Body Shop after 23 January and the damages to the vehicle had not been repaired.

James McClelland, a Special Agent with the North Carolina Bureau of Investigation, testified on behalf of the State. Agent McClelland processed the Honda by taking numerous pictures of the interior and exterior of the car, collecting hairs and fibers, collecting cigarette butts for DNA analysis, and performing tests for fingerprints and gunshot residue (GSR). Of the eight cigarette butts obtained from the vehicle, two of the butts contained defendant's DNA.

Defendant presented the testimony of Wayne Hill, an expert in firearms and crime

scene evidence collection and preservation. Mr. Hill testified that the damage to the vehicle's hood was consistent with damage that would have been made by a firearm projectile. Mr.Hill also testified that he was unable to inspect the vehicle, but relying on photographs of the vehicle, it was his opinion that the damage to the car would have been caused by a shooter who was seated in the passenger seat of the car.

Bryson, 2009 WL 235235, at *1-2.

Petitioner's procedural history is a complicated web of state and federal filings stemming from several separate criminal proceedings. This is partly due to Petitioner filing his federal petition before completing his state proceedings and partly from the state courts' intermingling of separate prosecutions. At this stage, the parties agree that Petitioner's federal petition was timely filed. (Doc. No. 19). Further, because of the confusion surrounding Petitioner's procedural history, Respondent asks the Court to bypass analysis of Petitioner's potential failure to exhaust his remedies and instead evaluate Petitioner's claims on the merits. (Doc. No. 21 at 4). The Court will accommodate this request. See 28 U.S.C. § 2254(b)(2). The following is a simplified account of Petitioner's procedural history drawn from docket entries 11, 16, 21, and 26.

Petitioner filed a Motion for Appropriate Relief ("MAR") in Buncombe County Superior Court on September 8, 2010. (Doc. Nos. 10-15; 16-1 at 5). Petitioner filed this federal habeas petition on October 2, 2010. (Doc. No. 1). The Superior Court denied Petitioner's MAR on the merits on December 23, 2010. (Doc. No. 16-1 at 5). Petitioner filed a petition for certiorari with the North Carolina Court of Appeals on January 24, 2011. (Doc. No. 25 at 3). The Court of Appeals denied the petition on February 10, 2011. (Id.).

II. DISCUSSION

    A.    Summary Judgment Standard

3

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B.  Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only

4

if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F .3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In contrast, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted).

C. Petitioner's Claims

Petitioner contends that he is entitled to relief because: (1) state officials committed prejudicial error when they deliberately interfered with a defense witness by instructing said witness not to appear at trial; (2) the state committed prejudicial error when it "planted" cigarette butts in a vehicle to establish probable cause to arrest and charge the defendant with this crime; (3) the trial court committed reversible error when it failed to give any manslaughter instructions; (4) the state committed prejudicial error when it suppressed its "impeachment"

5

evidence after numerous requests; (5) the court of appeals erred when it considered a newspaper article and FBI statement competent evidence; (6) the court of appeals misapplied <u>Brady</u> as to evidence Petitioner requested related to a vehicle released by the police; and (7) ineffective assistance of trial counsel. (Doc. No. 1).

1. Witness Interference

Petitioner claims that: (1) the state withheld an exculpatory witness by not disclosing a statement made by Katrina Price that her cousin was actually the shooter; and (2) the police interfered with his defense by instructing Price not to testify for Petitioner during his trial. (Doc. No. 26 at 6). The MAR court denied this claim, finding that:

> Defendant has presented no additional evidence indicating that exculpatory evidence was withheld from Defendant by the State or that inculpatory evidence was added by the State, thereby affecting the outcome of Defendant's trial.

(Doc. No. 16-1 at 5).

Petitioner's first point is meritless as his own argument shows that the state did disclose the statement. He argues that when Price did not show for trial he assumed that she no longer wished to testify against her cousin. (Doc. No. 26 at 9). Clearly, Petitioner was aware of Price's statement that her cousin was the shooter.

Petitioner's second argument must also be denied. Petitioner presented two affidavits from Price. In the first, Price stated that she was not served a subpoena. (Doc. No. 26-4 at 1). In the second, she testified that a detective gave her a subpoena to come to court, but told her that she was not needed and did not have to testify. (Doc. No. 26-5 at 6). The detective also allegedly told Price that pending drug charges against her would be dropped if she did not testify. (<u>Id.</u>). Price stated that she asked the detective if she would go to jail if she did not show up to court and the detective told her not to worry about that. (<u>Id.</u>). Petitioner has not presented

any evidence that he had subpoenaed Price. The state is free to release its own witnesses from its subpoena without infringing upon a defendant's rights. Without any evidence that Price was under a defense subpoena, Price's contradictory affidavits do not show that the state court's findings were unreasonable or clearly erroneous. Petitioner's first ground for relief is **DENIED**.

2. "Planted" Evidence

Petitioner alleges that the state planted cigarette butts with his DNA in the green Honda. (Doc. No. 26 at 15). The MAR court denied this claim as shown above, finding that the state did not add inculpatory evidence. (Doc. No. 16-1 at 5). Petitioner has not presented any evidence to support his claim that this evidence was "planted" by police. The state court's factual finding was reasonable. Petitioner's second ground for relief is **DENIED**.

3. Jury Instructions

Petitioner argues that the trial court erred in failing to instruct the jury on manslaughter. (Doc. No. 26-1 at 6). The MAR court denied this claim, finding that this claim could have been raised on appeal, but was not. (Doc. No. 16-1 at 5). This finding was an exercise of North Carolina's procedural bar. See N.C. Gen. Stat. § 15A-1419(a)(3). The Fourth Circuit has found this bar to be an adequate and independent state ground. See Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010). Thus, this Court cannot review this claim absent a showing of cause for the default and actual prejudice. Id. Petitioner has failed to show either. His third ground for relief is **DENIED**.

4. Access to Vehicle

Petitioner argues that his Fifth and Fourteenth Amendment rights were violated by the state's release of the green Honda Accord back to the garage where the state had obtained the vehicle. (Doc. No. 26-2 at 3). The North Carolina Court of Appeals rejected this contention on

direct appeal because Petitioner had failed to demonstrate any exculpatory value in the vehicle or any bad faith by the police. Bryson, 2009 WL 235235, at *3-4. The MAR court also found that the state did not suppress any exculpatory evidence. (Doc. No. 16-1 at 5). Petitioner has not provided any other evidence that would suggest the vehicle had exculpatory value or that the police released the vehicle in bad faith. The state court's decision was not clearly erroneous. Petitioner's fourth ground for relief is **DENIED**.

        5.        Newspaper Article and FBI Statement

Petitioner argues that the Court of Appeals erred when it affirmed the trial court's consideration of a newspaper article and FBI statement in evaluating the reliability of gunshot residue testing. (Doc. No. 26-2 at 8). Petitioner does not appear to state a constitutional claim in this ground for relief. Petitioner argues that the North Carolina Court of Appeals erred in ruling on a North Carolina evidence question. Such an argument is not cognizable under Section 2254. Petitioner's fifth ground for relief is **DENIED**.

        6.        Vehicle was Exculpatory

Here, Petitioner repeats his allegations regarding the alleged exculpatory value of the Honda Accord from his fourth ground for relief. Therefore, his claim is **DENIED** for the same reasons stated above.

        7.        Ineffective Assistance

Petitioner claims that "the issues within this petition serve[] as grounds for ineffective assistance of counsel." (Doc. No. 1 at 17). The MAR court found that trial counsel was competent and denied this claim for relief. (Doc. No. 16-1 at 5). Because Petitioner has failed to support any of the above claims for relief, his counsel could not have been ineffective for failing to raise them. Petitioner's seventh ground for relief is **DENIED**.

## III. CONCLUSION

Petitioner failed to support his seven claims for habeas relief. Therefore, his petition is **DISMISSED** on the merits.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**;

2. Petitioner's 2254 petition for habeas corpus, (Doc. No. 1), is **DISMISSED**; and

2. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 12, 2012

Robert J. Conrad, Jr.
Chief United States District Judge